UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GJON PEPAJ,

        Petitioner,

                                                    CASE NO. 2:07-CV-12610
v.                                          HONORABLE PATRICK J. DUGGAN

KENNETH T. MCKEE,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Gjon Pepaj ("Petitioner"), presently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Michael Skinner, Petitioner challenges his March 2004 conviction for one count of first-degree murder, one count of carrying a concealed weapon, and one count of possession of a firearm in the commission of a felony. For the reasons stated below, the Court denies the petition for a writ of habeas corpus.

**I. Background**

Petitioner was convicted of the above offenses in March 2004 following a jury trial in the Oakland County Circuit Court. On April 13, 2004, the trial court sentenced Petitioner to life imprisonment without parole on the murder charge, two years imprisonment on the felony firearm charge, and two to five years of imprisonment on the

carrying a concealed weapon charge. Petitioner's conviction and sentence were affirmed on appeal. *People v. Pepaj,* No. 255370, 2005 WL 2016743, at **1, 4 (Mich. Ct. App. Aug. 23, 2005) (unpublished opinion). The Michigan Supreme Court denied Petitioner leave to appeal. *People v. Pepaj*, 474 Mich. 1092, 711 N.W.2d 360 (2006).

The Michigan Court of Appeals generally described the incident underlying Petitioner's conviction as follows:

> Defendant was convicted of fatally shooting Gjek Isufaj during a mass at St. Paul's Albanian Church in Rochester Hills. Defendant and the decedent, formerly friends, were allegedly involved in an Albanian blood feud, or "gjakmarrja."
>
> . . .
>
> . . . Although there was a history of "bad blood" between defendant and the decedent, the shooting occurred during a crowded mass in a church. The trial court found that the only threat on that particular day was that the decedent made a face with "tightened teeth" as he passed defendant's church pew.
>
> . . .
>
> . . . Here, the evidence showed that after the decedent gave defendant a "look" and sat down in church, defendant shot the decedent seven times in the back and twice in the head, then struck him in the head with the empty gun.

*Pepaj*, 2005 WL 2016743, at **1, 4. The court of appeals' factual recitation is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1).

Petitioner filed the pending application for a writ of habeas corpus on June 19, 2007, asserting the same grounds for relief that he raised on direct appeal in the state courts:

2

> I. The trial court deprived Defendant-Appellant of his constitutionally guaranteed right to a fair trial by failing to suppress Defendant-Appellant's custodial interview statements at trial.
>
> II. The trial court deprived Defendant-Appellant of his constitutionally guaranteed right to a fair trial by failing to properly instruct the jury.
>
> III. The trial court deprived Defendant-Appellant of his constitutionally guaranteed right to a fair trial by improperly suppressing the opinion testimony of an expert witness.

Respondent filed a response to the Petition on January 17, 2008. Respondent argues that some of Petitioner's claims set forth in his second ground for relief are procedurally defaulted. Respondent argues that Petitioner's remaining claims lack merit.

## II. Standard of Review

Petitioner's application for habeas relief is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996); *see Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S. Ct. 2059, 2063 (1997). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under Section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable

determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523.

A state court's findings of fact are presumed correct unless the petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. Analysis

#### A. Petitioner's Fifth Amendment claim

Petitioner first contends that the trial court erred in refusing to suppress his custodial statements to the police, claiming that he did not voluntarily or intelligently waive his Fifth Amendment right against self-incrimination. The trial court conducted a "*Walker*[1] hearing" with respect to Petitioner's motion to suppress his statements and denied the motion on February 27, 2004, finding that under the totality of the

---

[1]*People v. Walker*, 374 Mich. 331, 132 N.W. 2d 87 (1965).

4

circumstances, Petitioner's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. The Michigan Court of Appeals found no error in this conclusion, providing in part:

> We have reviewed the videotaped interview of defendant's interrogation and are satisfied that the trial court did not clearly err in finding that defendant knowingly and intelligently waived his *Miranda* rights. Although defendant had some difficulty with the English language, he asked questions when he did not understand something, and the detective who interviewed defendant repeated and rephrased anything defendant seemed unclear about, interjected several times with questions about defendant's ability to understand, and reminded defendant to tell him if anything were unclear. Defendant repeatedly indicated[] that he understood what was being said and answered questions appropriately and in great detail. Additionally, although defendant requested an interpreter at the *Walker* hearing, as the trial court noted, defendant repeatedly answered questions in court before they were interpreted, thereby reflecting his ability to comprehend the English language. The record reflects that, at a minimum, defendant possessed the requisite basic understanding of his rights, which is all that is required for a knowing and intelligent waiver.

*Pepaj*, 2005 WL 2016743, at *2. The Michigan Court of Appeal's conclusion was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts presented.

"[T]he prosecutor may not use statements, whether exculpatory or inculpatory, stemming for custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). "[T]he accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived *Miranda* rights'

5

when he made the statement." *Berghuis v. Thompkins*, – U.S. –, 130 S.Ct. 2250, 2260 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757 (1979)). A waiver must result from "'a free and deliberate choice rather than intimidation, coercion, or deception,'" and it must be "'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986)). The prosecutor does not need to show that the defendant expressly waived his *Miranda* rights; an implicit waiver is sufficient. *Id.* at 2261.

In determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. 104, 112, 106 S. Ct. 445, 450-51 (1985). The following non-exhaustive factors are relevant in making this determination: whether there was police coercion; the length of interrogation; the location of the interrogation; the continuity of the interrogation; the suspect's maturity, education, physical and mental condition; and whether the suspect was advised of his or her *Miranda* Rights. *Withrow v. Williams*, 507 U.S. 680, 693-94, 113 S. Ct. 1745, 1754 (1993). All of the factors involved in the giving of the statement should be be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860 (1961). However, without coercive police activity, a confession should not be deemed involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522 (1986) (indicating that "coercive police activity is a necessary predicate to the

finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

Having reviewed the transcript of Petitioner's police interrogation, this Court concludes that Petitioner knowingly and intelligently waived his Fifth Amendment rights and voluntarily spoke with the police. The police officers advised Petitioner of his *Miranda* rights before interrogating him. The Michigan Court of Appeals correctly determined that any difficulty Petitioner has with the English language did not prevent him from understanding his rights and the questions presented to him. Whenever Petitioner did not understand something, he asked the police to clarify an issue and they responded accordingly. The officer who questioned Petitioner repeated and rephrased questions whenever Petitioner seemed unclear about what was being asked, asked Petitioner several times if he understood what was being said to or asked of him, and reminded Petitioner to inform him if anything was unclear. Petitioner repeatedly told the officers that he understood what was being said and answered their questions appropriately. The transcript of the interrogation as well as Petitioner's trial testimony reflect that Petitioner had a sufficient command of the English language.

Furthermore, on habeas review, a federal district court must presume the correctness of the state court's factual determinations unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001). "Whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of

7

those rights was knowing and intelligent." *Williams v. Jones,* 117 Fed. App'x 406, 412 (6th Cir. 2004). Thus, "on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence." *Id*. (citing *Valdez v. Ward*, 219 F. 3d 1222, 1231 (10th Cir. 2000)). Petitioner has failed to offer clear and convincing evidence to this Court to rebut the state court's finding that he had a sufficient command of the English language to knowingly, intelligently, and voluntarily waived his *Miranda* rights when he spoke with the officers.

Petitioner also contends that the trial court should have suppressed his confession because the police began to question him before he waived his rights. The Michigan Court of Appeals rejected this claim, finding that the officers merely asked Petitioner a number of background questions regarding his age, work history, time in this country, and medical condition before advising him of his *Miranda* rights and that this was lawful. *Pepaj*, 2005 WL 2016743 at *2. The Michigan court was correct in its factual and legal analysis.

The police are not required to administer *Miranda* warnings before asking routine booking questions that are not designed to elicit incriminatory admissions, such as a defendant's name, address, height, weight, eye color, date of birth and current address. *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02, 110 S.Ct. 2638, 2650 (1990); *see also United States v. Clark*, 982 F. 2d 965, 968 (6th Cir. 1993) (explaining that "ordinarily ... the routine gathering of biographical data for booking purposes should not constitute

8

interrogation under *Miranda* "). The questions the officers asked Petitioner before advising of him of his *Miranda* rights involved biographical data, only. Accordingly Petitioner's answers to these routine booking questions did not need to be suppressed under *Miranda* and the asking of such questions by the officers did not render his subsequent confession involuntary.

Petitioner also claims that the police interrogation should have stopped because he told the interviewing officers that he did not want to talk to them. As the Michigan Court of Appeals correctly determined in rejecting Petitioner's claim, *see Pepaj*, 2005 WL 2016743, at *2, although Petitioner indicated that he wanted to talk to an officer that he knew from another police department, he also indicated that he was willing to talk to the interrogating officers about the case. An accused suspect who wishes to invoke his or her right to remain silent must do so unambiguously. *Berghuis,* 130 S. Ct. at 2260. Accordingly, the police did not violate Petitioner's Fifth Amendment rights by continuing to interrogate him after he made this statement.

Petitioner further contends that the police misled him when one of the officers defined "coercion"[2] and that they made some sort of promise to him when one of the officers wanted to know why he shot the victim and told him that "[t]he why becomes important to you." The Michigan Court of Appeals found that the officer's definition of

---

[2]The officer explained:"Say I wanted to talk to you ... so I open up that door and your wife's there and my partner's out there and he's holding a gun to her head saying, you're gonna talk to us, you're gonna talk to us. That's kind of forcing you to do something you don't want to do."

"coercion" was not calculated to mislead Petitioner and that the officers did not promise Petitioner anything in exchange for his statement. *Pepaj*, 2005 WL 2016743, at \*\*2-3. These were reasonable determinations of the facts presented. Moreover, the Court must consider the totality of the circumstances in determining whether Petitioner's confession was rendered involuntary and does not find that these statements by the officers infected the process.

The Michigan Court of Appeals made a reasonable determination of the facts relevant to Petitioner's statement to the police and the totality of the circumstances surrounding his statement based on those facts reflect that the state court correctly concluded that his confession was voluntary. Petitioner was advised of his *Miranda* rights by the police, indicated that he understood those rights, and wished to speak with the police. Although Petitioner was determined to have had only eight years of education and "low-average intelligence," there is no indication that he was mentally retarded or suffering from mental illness. Fellow churchgoers injured Petitioner when they restrained him after the shooting, but the police requested medical assistance for him, he was examined by a paramedic, and declined further treatment. While Petitioner had not eaten from the time of his breakfast at 8:30 a.m. until his interrogation around 5:30 p.m., he was offered food but declined. The entire interrogation lasted about ninety minutes, which does not constitute a lengthy amount of time to interrogate a suspect. *See e.g. United States v. McClendon*, 362 Fed. App'x 475, 482 (6th Cir. 2010) (finding that the defendant's interrogation was not rendered involuntary because he was questioned for

two hours). Finally, there is no evidence suggesting that the officers physically assaulted or abused Petitioner or coerced him in any way into making his statement.

But even assuming that the trial court erred in admitting Petitioner's statement into evidence, the admission was harmless. Federal habeas relief only should be granted if the trial error had a substantial and injurious effect or influence on the jury's verdict. *Fry v. Pliler*, 551 U.S. 112, 116-20, 127 S. Ct. 2321, 2325-27 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 113 S Ct. 1710 (1993)). The admission of evidence obtained from a suspect in violation of *Miranda* is considered harmful only if it has a substantial and injurious effect in determining the jury's verdict. *See Kyger v. Carlton*, 146 F. 3d 374, 381-82 (6th Cir. 1998). In light of the number of eyewitnesses who identified Petitioner as the shooter, the admission of Petitioner's statement to the police did not have a substantial or injurious influence or effect on the jury's verdict. *Id.* Furthermore, Petitioner's statements to the police were substantially identical to Petitioner's testimony at trial and thus the admission of his statements, even if error, was harmless. *See Walendzinski v. Renico*, 354 F. Supp. 2d 752, 761 (E.D. Mich. 2005).

For the above reasons, the Court concludes that Petitioner is not entitled to habeas relief based on his Fifth Amendment claim.

### B. Petitioner's due process claim based on jury instructions

In his second claim, Petitioner contends that he was deprived of a fair trial because the trial court failed to properly instruct the jury with respect to eight instructions. Respondent contends that six of Petitioner's eight jury instruction claims are procedurally

defaulted because Petitioner failed to object at trial and, as a result, the Michigan Court of Appeals reviewed these claims for plain error only.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review also is barred unless the petitioner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged constitutional violation, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51, 111 S. Ct. 2546, 2565 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986). In an extraordinary case, however, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80, 106 S. Ct. 2639, 2641 (1986). Yet to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 866 (1995).

The Michigan Court of Appeals clearly indicated that by failing to object at trial, Petitioner waived his claims involving the following: (a) the allegedly improper self-defense instruction; (b) two second-degree murder instructions; (c), the trial court's failure to instruct the jury on Petitioner's state of mind; (d) the instruction on motive; and (e) the trial court's failure to instruct the jury on the lesser offenses of involuntary

12

manslaughter, discharge of a firearm pointed intentionally but without malice, and careless, reckless, or negligent discharge of a firearm. The fact that the Michigan Court of Appeals reviewed these claims for plain error does not constitute a waiver of the state procedural default bar. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of Petitioner's claims for plain error as the enforcement of a procedural default. *Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001). These six jury instruction claims are procedurally defaulted.

Petitioner nevertheless contends that any procedural default should be excused because his trial counsel was ineffective for failing to object to the erroneous or omitted jury instructions. For ineffective assistance of counsel to constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1591 (2000). A review of Petitioner's state court appellate briefs indicate that he never raised an ineffective assistance of counsel claim in the Michigan courts. Because Petitioner never raised such a claim in the Michigan courts, the alleged ineffectiveness of counsel does not constitute cause to excuse his default with respect to his jury instruction claims.

Petitioner does not contend that the failure to consider these claims will result in a "fundamental miscarriage of justice." Additionally, he has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. The Court therefore concludes that Petitioner's state procedural default due to his failure

to make a contemporaneous objection at trial bars habeas review of six of his eight jury instruction claims.

Petitioner, however, did preserve his challenges to the trial court's failure to instruct the jury on the lesser included offense of involuntary manslaughter and the defense of "imperfect self-defense." With respect to the first, the United States Supreme Court has declined to hold that the Due Process Clause requires a state trial court to instruct a jury on a lesser included offense in a non-capital case. *See Beck v. Alabama,* 447 U.S. 625, 638, n. 14, 100 S. Ct. 2382, 2390 n.14 (1980). The Sixth Circuit has interpreted *Beck* to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F. 2d 792, 795-97 (6th Cir. 2002) (en banc)); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (holding that the petitioner convicted of first-degree murder was not entitled to habeas relief based on the trial court's failure to instruct the jury on the lesser offense of involuntary manslaughter). Thus, the trial court's failure to instruct the jury on involuntary manslaughter in Petitioner's non-capital case was neither contrary to nor an unreasonable application of clearly established federal law as required for federal habeas relief.

Petitioner also is not entitled to habeas relief based on the trial court's failure to instruct the jury on the defense of imperfect self-defense. The Michigan Court of Appeals held that the doctrine of imperfect self-defense was inapplicable in Petitioner's case because he used excessive force against the victim and therefore the trial court did

not err when it refused to instruct the jury with respect to the defense. *Pepaj*, 2005 WL 2016743, at *4. A defendant only is entitled to a jury instruction when the instruction is supported by law and sufficient evidence. *Williams v. Kentucky*, 124 F. 3d 201, 204 (6th Cir. 1997); *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887 (1988).

The Michigan Court of Appeals has recognized imperfect self-defense as a qualified defense that can mitigate a murder charge to voluntary manslaughter. *People v. Kemp*, 202 Mich. App. 318, 323, 508 N.W. 2d 184, 187 (1993). This defense is available where the defendant would have been entitled to raise the theory of self-defense had he or she not been the initial aggressor. *Id*. However there are several circumstances where the defense is not available, including where the defendant responded to the victim's aggression with excessive force. *Id*. at 325, 508 N.W.2d at 188; *see also Whalen v. Trippett*, No. 98-2047, 2000 WL 977342, at *3 (6th Cir. July 7, 2000) (unpublished opinion). There was sufficient evidence in this case to support the state court's finding that Petitioner used excessive force in repelling any alleged aggression by the victim. Petitioner shot the victim seven times in the back and twice in the head, before striking him in the head with the empty gun. In short, Petitioner was not entitled under Michigan law to an instruction on the imperfect self-defense doctrine and thus is not entitled to the issuance of a writ of habeas corpus due to the trial court's failure to provide such an instruction.

For the above stated reasons, the Court holds that Petitioner is not entitled to habeas relief as a result of the trial court's jury instructions.

## C. Petitioner's due process claim based on
## the suppression of expert witness testimony

Petitioner next contends that the trial court erred by excluding the expert opinion testimony of Dr. Michele Hill, who conducted a mental competency examination of Petitioner before trial. Petitioner sought to present Dr. Hill's expert testimony to support his self-defense claim. Specifically, Petitioner sought to introduce Dr. Hill's opinion that Petitioner's "stated fear of dying at the hands of his current victim was sincere and not exaggerated. It is this examiner's belief that [Petitioner] did indeed fear that his life was in imminent danger at the time of the alleged offense and that he had no other resource at his disposal other than the action he took." (Doc. 7-5.)

The Michigan Court of Appeals rejected Petitioner's claim, concluding that Dr. Hill's opinion on the ultimate issue of whether Petitioner acted in self-defense was not a proper subject for expert testimony. *Pepaj*, 2005 WL 2016743, at *5. The state appellate court further reasoned that, pursuant to Michigan law, a defendant's statements during a competency examination are not admissible at trial except on the issues of mental illness or insanity at the time of the offense. *Id*. (citing Mich. Comp. Laws § 768.20a(5)).

Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable in § 2254 habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). "'Errors in the application of state law, particularly rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.'" *Seymour v. Walker*,

224 F. 3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). The exception to this rule is where the error rises to the level of a due process violation. To constitute such a violation, the admission or exclusion of evidence must have affected the fundamental fairness of the trial– i.e., "'offend[ed] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id*. (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S. Ct. 2013 (1996)).

Courts considering the same issue presented by Petitioner in this claim have held that ". . . a criminal defendant is not constitutionally entitled to introduce an expert's conclusion that the criminal defendant acted in self-defense." *Tourlakis v. Morris*, 738 F. Supp. 1128, 1135 (S.D. Ohio 1990) (citing *Phillips v. Wainwright*, 624 F.2d 585, 590 (5th Cir. 1980)). As the Fifth Circuit reasoned in *Phillips*, "[t]he issue of self-defense comprises many considerations that are manifestly outside the area of expertise of a psychiatrist or psychologist." 624 F. 2d 585, 590 (5th Cir. 1980). The court further reasoned that if a psychiatrist or psychologist were to testify that in his or her opinion the defendant was acting in self-defense, "they would be affirming not only that [the defendant] was likely to have had the requisite subjective state of mind, an opinion that their professional knowledge might well have qualified them to give, but also that [the defendant's] state of mind was reasonable, that she had taken adequate steps to avoid the danger, that it was not necessary for her to have retreated, . . .." *Id.* Such opinions, the Fifth Circuit concluded, are "clearly outside the scope of their professional expertise." *Id.*

17

This Court therefore concludes that Petitioner was not denied a fundamentally fair trial as a result of the trial court's exclusion of Dr. Hill's testimony on the issue of self-defense. Notably, Petitioner was not prevented from presenting evidence to the jury regarding his state of mind in support of his self-defense claim and, in fact, he presented such evidence through other testimony including his own testimony at trial. The Court thus holds that Petitioner is not entitled to habeas relief based on his third claim.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Petitioner fails to assert a ground for habeas relief pursuant to § 2254. The Court further concludes that he is not entitled to a certificate of appealability pursuant to 28 U.S.C. § 2253.

Pursuant to § 2253, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Supreme Court has stated, when a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). When a district court denies habeas relief on procedural grounds without reaching the petitioner's constitutional claims, a certificate may issue if the petitioner shows that jurists of reason would find it debatable whether (1) the petition states a valid claim of a denial of a constitutional right; *and* (2) the district court was correct in its procedural ruling. *Id*. at 484-85, 120 S. Ct. at 1604.

The Court finds that reasonable jurists would not find its assessment of the merits of Petitioner's claims debatable.  The Court further finds that reasonable jurists would not finds its procedural ruling with respect to some of Petitioner's jury instruction claims incorrect.  In short, Petitioner has failed to make a substantial showing of the denial of a constitutional right.

Accordingly,

**IT IS ORDERED**, that Petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that this Court will not issue a certificate of appealability.

DATE: July 16, 2010                              s/PATRICK J. DUGGAN
                                                 UNITED STATES DISTRICT JUDGE

Copies to:
Michael Skinner, Esq.
John S. Pallas, Esq.